UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Court File No. 26-mj-81 |
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY MEMORANDUM SUPPORTING MOTION TO STRIKE APPEARANCE** |
| Paul E. Johnson, | |
| Defendant. | |

## INTRODUCTION

The government argues that the Court should deny Defendant Paul Johnson's Motion to Strike the Appearance of SAUSA Michael Hakes-Rodriguez because certain statutes provide "express authorization" for Mr. Hakes-Rodriguez's participation despite the prohibitions of the Posse Comitatus Act. But the government's reading of these statutes is contorted. The statutes do not contain any such "express authorization." Moreover, Mr. Hakes-Rodriguez's appearance violates the *Bissonette* test articulated by the Eighth Circuit Court of Appeals, because it constitutes an impermissible exercise of military power in civilian law enforcement and thus violates the Posse Comitatus Act. The Court should grant Defendant's motion.

## BACKGROUND

On January 16, the Department of Defense announced it was "assigning military judge advocates to assist the U.S. Attorney's office with its mission there."[1] A request for twenty-five Judge Advocate General ("JAG") officers for assignment in Minnesota was circulated internally at the Department of Defense, noting: "Ideally [these JAG officers] have significant experience in criminal prosecution, civil litigation, administrative law, immigration law, general litigation, or other related fields."[2] Mr. Hakes-Rodriguez is one of the JAG officers detailed to the District of Minnesota pursuant to this request. He is an active-duty member of the United States Army.

On January 22, 2026, Mr. Johnson was arrested in a north Minneapolis gas station parking lot. ICE agents allege that Mr. Johnson had sprayed the outside of one of their vehicles with pepper spray, which justified their stop and subsequent arrest of Mr. Johnson. At the time, they allege, Mr. Johnson following them through his neighborhood with a megaphone to warn others about ICE's presence. Nothing about Mr. Johnson's purported spraying of an ICE vehicle, his conduct that evening, or his arrest has any relationship with or connection to any military installation, property, mission, or personnel.

Mr. Hakes-Rodriguez signed the misdemeanor information in this case on February 12, 2026. ECF No. 20.

---

[1] https://www.war.gov/News/News-Stories/Article/Article/4381571/this-week-in-dow-strengthening-the-defense-industrial-base-jags-assist-immigrat/

[2] https://www.cnn.com/2026/01/13/politics/pentagon-military-lawyers-minneapolis-immigration-crackdown

## **ARGUMENT**

The Posse Comitatus Act ("PCA") provides: "[w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C.S § 1385.

The government advances several arguments as to why Mr. Hakes-Rodriguez's appearance in this case does not violate the PCA. First, it contends that several statutes "expressly authorize" JAG officer prosecution of misdemeanor offenses in civilian court. One of the statutes, 28 U.S.C. § 543 generally authorizes the Attorney General to appoint Special Assistant United States Attorneys ("SAUSAs") but says nothing about the military or the PCA, let alone "expressly authorizing" the kind of military lawyer involvement with civilian prosecutions occurring here. The other statute, 10 U.S.C. § 806(e)(1), authorizes JAG officers to "perform the functions of a civil office in the Government of the United States" when lawfully detailed to do so. Again, it does not contain an "express authorization" to violate the PCA.

Second, it contends that under the Eighth Circuit's *Bissonette* test, Mr. Hakes-Rodriguez's prosecution of Mr. Johnson does not violate the PCA. But the government's main argument – that Mr. Hakes-Rodriguez's prosecution of Mr. Johnson is not an "exercise of military power" because Mr. Hakes-Rodriguez is officing in Minneapolis and supervised by a local AUSA – is meritless.

The Court should reject these arguments and grant Mr. Johnson's motion.

3

## I. THE STATUTES UPON WHICH THE GOVERNMENT RELIES DO NOT EXCUSE THE POSSE COMITATUS ACT VIOLATION HERE.

### A. 10 U.S.C. § 806(d)(1) does not expressly authorize JAG prosecutions in civilian court absent a military nexus.

The government relies most heavily on 10 U.S.C. § 806(e)(1) to justify its position. Section 806(e)(1) states: "a judge advocate who is assigned or detailed to perform the functions of a civil office in the Government of the United States under section 973(b)(2)(B) of this title may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases."

Despite the government's contortions, this statute cannot be read as an express exception to the PCA. Rather, as Amici detail in their brief, interplay between this statute, section 973(b)(2)(B), and the legislative history of both, confirms that JAG officers are limited to participating in civilian court only to the extent that their participation touches on matters related to the military, which this case is not. *See generally* ECF No. 39-1.

In fact, consistent with the intent behind and language within these statutes, the Army's own regulations preclude Mr. Hakes-Rodriguez's prosecution of Mr. Johnson's wholly civilian case. 32 C.F.R. § 516.4 limits Army JAG officers to appearing as SAUSAs in cases, "in which the Army has an interest." 32 C.F.R. § 516.4(e). This is not such a case. The Army has no interest in prosecuting Mr. Johnson for a misdemeanor violation of 18 U.S.C. § 111 involving alleged interference with an ICE or CBP agent.

Similarly, per Army Regulation 27-10, ¶ 23-5(a), *Military Justice* (8 January 2025), Army JAG officers may prosecute misdemeanors in civilian court only where the

misdemeanor was committed on a military installation. The allegations against Mr. Johnson do not involve a military installation or even military personnel.

In short, Mr. Hakes-Rodriguez's appearance in this case does not even comport with the Army's own regulations, let alone the PCA. If 10 U.S.C. § 806 meant to authorize JAG officer participation in purely civilian prosecutions, it would make no sense for the Army to forbit it via its own regulations. The statute was not so intended, it did not so authorize, and it does not permit Mr. Hakes-Rodriguez's participation here.

> **B.  28 U.S.C. § 543 does not expressly authorize JAG prosecutions in civilian court absent a military nexus.**

28 U.S.C. § 543 provides a general grant of authority to the Attorney General to appoint non-DOJ lawyers as SAUSAs. It does not even reference the military, let alone "expressly authorize" an exception to the specific restrictions of the Posse Comitatus Act.

The government extensively cites *United States v. Allred* for its argument that 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1) "expressly authorize" Mr. Hakes-Rodriguez's appearance. 867 F.2d 856, 871 (5th Cir. 1989). But this case is nothing like *Allred*. First, the prosecutor in *Allred* was a U.S. Air Force JAG officer who had been sworn in as a special assistant to the United States Attorney to assist with the investigation and prosecution of one case involving contractor fraud on the air force base where the JAG officer was stationed. *See id.* at 870-871. Mr. Hakes-Rodriguez is prosecuting at least nine cases in this District. None involve the military in any way, let alone crimes committed against the Army on the base where he is stationed. The longstanding concerns about undue

influence of the military on civilian law enforcement are entirely absent from *Allred* and were not considered by the court in construing the relevant statutes.

Moreover, *Allred* simply gets the analysis of these statutes wrong. 28 U.S.C. § 543 does not expressly grant authority for the DOJ to co-opt military lawyers to serve in a civilian capacity. Nor does 10 U.S.C. § 806(d)(1). Finally, *Allred* does not grapple with the legislative history and background laid out in detail in Amici's brief, all of which confirms that 10 U.S.C. § 806(e)(1) was intended to and does limit the participation of JAG officers in civilian court to those cases with some nexus or connection to the military. *Allred* is a Fifth Circuit case and is not binding on this Court. Moreover, because it is so strikingly inapposite, it holds little persuasive value. The Court should disregard it.

### III. MR. HAKES-RODRIGUEZ'S APPEARANCE FAILS THE *BISSONETTE* TEST.

In *Bissonette v. Haig*, the Eighth Circuit explained: "military enforcement of the civil law leaves the protection of vital Fourth and Fifth Amendment rights in the hands of persons who are not trained to uphold these rights. It may also chill the exercise of fundamental rights, such as the rights to speak freely and to vote, and create the atmosphere of fear and hostility which exists in territories occupied by enemy forces." 776 F.2d 1384, 1387 (8th Cir. 1985), *on reh'g*, 800 F.2d 812 (8th Cir. 1986), *aff'd*, 485 U.S. 264 (1988).

The Eighth Circuit further explained: "The governmental interests favoring military assistance to civilian law enforcement are primarily twofold: first, to maintain order in times of domestic violence or rebellion; and second, to improve the efficiency of civilian

law enforcement by giving it the benefit of military technologies, equipment, information, and training personnel." *Id.*

Neither of these interests are present here. There is no "domestic violence or rebellion" in Minnesota. Nor does Mr. Hakes-Rodriguez's appearance in this case give the government "the benefit of military technologies, equipment, information, and training personnel." Indeed, Mr. Hakes-Rodriguez has less experience prosecuting federal criminal cases than almost anyone else in the criminal division of the U.S. Attorney's office. This case involves a run-of-the-mill misdemeanor prosecution alleging that Mr. Johson physically assaulted a CBP officer while he was being arrested. There is no connection, relation, or nexus to the military, and thus we start from the position that to the extent the Eighth Circuit recognizes legitimate policy interests in military cooperation with civilian law enforcement, those interests are absent here.

*Bissonette* ultimately established the following test for permissible military involvement in civilian law enforcement under the PCA: "military involvement, even when not expressly authorized by the Constitution or a statute, does not violate the Posse Comitatus Act unless it actually regulates, forbids, or compels some conduct on the part of those claiming relief." *Bissonette*, 776 F.2d at 1390. Here, Hakes-Rodriguez's prosecution of Mr. Johnson purports to regulate Mr. Johnson's conduct by application of a criminal statute.

The government does not seem to dispute that Mr. Hakes-Rodriguez's prosecution of misdemeanor cases in this district fails the *Bissonette* test and thus would normally violate the PCA. Instead, the government argues, because Mr. Hakes-Rodriguez is

7

"assigned to the DOJ on a full-time basis," is "perform[ing] a well-defined prosecutorial function in an entirely civilian capacity," and "is being supervised within the District of Minnesota United States Attorney's Office," his work as a prosecutor does not subject Mr. Johnson to the "exercise of military power."  ECF No. 35 at 6-7.

This argument seriously misreads the PCA and *Bissonette*. Following the government's logic, if the Army detailed active-duty military officers to the Minneapolis Police Department, dressed them in MPD uniforms and put them on the street doing traffic stops, it would not be subjecting the citizens of Minneapolis to "the exercise of military power." But the PCA requires more than a change of clothes to render military participation in civilian law enforcement legal. Simply officing at the U.S. Attorney's office, communicating with staff there regarding this case, and being detailed here on a full-time basis, does not "de-militarize" Mr. Hakes-Rodriguez. Quite the opposite. The work done by Mr. Hakes-Rodriguez and the other JAG officers in this District militarizes the U.S. Attorney's office. And that militarization is exactly what the PCA forbids.

### IV. STRIKING MR. HAKES-RODRIGUEZ'S APPEARANCE IS THE APPROPRIATE REMEDY.

Striking Mr. Hakes-Rodriguez's appearance is the appropriate remedy here. A violation of the PCA constitutes a felony. And Army regulations forbid JAG officers from prosecuting civil cases absent a military nexus. As a practical matter, the Court cannot countenance the appearance of an attorney whose very appearance violates a criminal statute or other laws. Allowing Mr. Hakes-Rodriguez's continued participation in this case – participation which he must not question as he received military orders to come to

Minnesota and work for DOJ – places Mr. Hakes-Rodriguez in an awkward and untenable position with respect to his ethical responsibilities. Frankly, it is not fair to Mr. Hakes-Rodriguez that DOJ and DoD have placed him in this position, and Mr. Johnson certainly bears him no ill will. The fault lays with DOJ and DoD – particularly with DOJ. As Judge Schiltz recently recognized, the line prosecutors and other lawyers who have been conscripted to deal with the mess of litigation generated by ICE's Operation Metro Surge "have been put in an impossible position by [the U.S. Attorney] and his superiors in the Department of Justice…" Order, ECF No. 12 at 4, *Juan T.R. v. Noem, et al.*, Case No. 26-cv-0107 (D. Minn., filed Feb. 26, 2026).

The Court cannot enable the violation of a law or laws through permitting the appearance of an attorney. Mr. Johnson has the right to a prosecution untainted by a violation of the PCA. Mr. Hakes-Rodriguez deserves to be detailed to assignments that do not violate laws or regulations. The only just, fair and appropriate solution to the PCA and regulatory violations presented by Mr. Hakes-Rodriguez's participation in this case is to strike his appearance.

## **CONCLUSION**

For the above-stated reasons, Defendant respectfully requests that the Court grant his Motion to Strike the appearance of Mr. Hakes-Rodriguez.

Respectfully submitted,

Dated:  March 10, 2026 */s/ Kevin C. Riach*
Kevin C. Riach (#0389277)
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Telephone:  612.203.8555
kevin@riachdefense.com
***Attorney for Defendant***