**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

United States of America,

        Plaintiff,

    vs.

Paul Ervin Johnson,

        Defendant.

Case No:  26-mj-81 (KMM/SGE)

**ORDER**

---

This matter is before the Court on Defendant's Motion to Strike Appearance of Government's Counsel, filed on February 16, 2026. (Dkt. 24.) A hearing was held on all Mr. Johnson's motions the next day, February 17, 2026. (Dkt. 26.) Mr. Johnson was present with his attorney, Kevin Riach, and Special United States Attorney ("SAUSA") Torrie Schneider represented the United States of America ("the Government"). (Dkt. 26.) Following the hearing, the Court ordered supplemental briefing on the Motion to Strike Appearance of Government's Counsel. (*Id.*) And on March 11, 2026, the Court granted the unopposed Motion for Leave to File Brief of Amici Curiae, filed by former United States military lawyers in support of Mr. Johnson. (Dkt. 44.) Briefing concluded on March 24, 2026, and the Court held an additional hearing on the issue on April 3, 2026.[1] (Dkt. 51.)

At this hearing, Mr. Johnson was represented by Kevin Riach, and the Government was represented by SAUSA Michael Hakes-Rodriguez (a Judge Advocate General military lawyer ("JAG")) and Assistant United States Attorney Bradley Endicott. (*Id.*) At the

---

[1] *See* Dkts. 35 (Government's Brief), 39-1 (Amici Curiae Brief); 43 (Mr. Johnson's Reply Brief); 49 (Government's Sur-Reply Brief).

conclusion of the hearing, the Court took the motion under advisement. On April 6, 2026, SAUSA William Richards, also a JAG lawyer, replaced SAUSA Michael Hakes-Rodriguez, who was ordered to return to Memphis to work for the U.S. Attorney's Office there. (Dkt. 50; Tr. 63.[2]) Mr. Johnson filed an Amended Motion to Strike Appearance clarifying that his request now applies to SAUSA Richards. (Dkt. 54)

In briefing, Mr. Johnson and amici curiae argue that that the use of JAG lawyers to prosecute civilians in cases without a military nexus violates the Posse Comitatus Act ("PCA") and Department of Defense regulations. (Dkts. 24, 39-1, 43.) The Government counters that use of JAG lawyers as SAUSAs falls under statutorfy exceptions to the PCA. (Dkts. 35, 49.) After careful consideration and for the reasons stated below, Mr. Johnson's Motion to Strike Appearance of Government's Counsel is **DENIED.** (Dkts. 24, 54.)

## I.    The Posse Comitatus Act

The PCA is a criminal statute which provides:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1385.[3] "The [PCA] was enacted toward the end of the Reconstruction era after the Civil War 'for the purpose of limiting the direct active use of federal troops by civil law enforcement officers to enforce the laws of this nation.'" *United States v. Wooten*, 377

---

[2] For ease of reference, the hearing transcript (Dkt. 60) will be cited as "Tr." followed by the page number associated with the citation.

[3] Congress recently amended the PCA to add the Navy, the Marine Corps, and the Space Force. *See* Pub. L. No. 117-81, Div. A, Title X, § 1045, 135 Stat. 1541, 1905 (2021).

F.3d 1134, 1139 (10th Cir. 2004) (quoting *United States v. Hutchings,* 127 F.3d 1255, 1257 (10th Cir.1997)). "It was intended 'to prevent the use of the federal army to aid civil authorities in the enforcement of civilian laws.'" *Id.* (quoting *Nelson v. Geringer,* 295 F.3d 1082, 1092 n.11 (10th Cir.2002)).

In this case, there is no dispute that exceptions to the PCA exist "in cases and under circumstances expressly authorized by the Constitution or Act of Congress." (*See* Dkt. 39-1 at 15 (acknowledging that a court may recognize exceptions to the PCA); Dkt. 43 at 4-6 (same); Dkt. 49 at 4-5 (same).) The parties disagree, however, on whether the specific statutes the Government relies on constitute "express" exceptions to the PCA authorizing the use of JAG lawyers as SAUSAs. (Dkt. 39-1 at 4; Dkt. 43 at 3; Dkt. 49 at 4.)

## II.    Statutory Exceptions to the PCA

The Government argues that both 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1)[4] authorize use of JAG lawyers as SAUSAs and thus operate as exceptions to the PCA. (Dkt. 4 at 4-5.) Mr. Johnson and amici curiae argue that the PCA "prohibits the willful use of any federal military personnel 'to execute the laws' unless '*expressly* authorized by the Constitution or Act of Congress," and neither of these statues create an *express* exception. (Dkt. 39-1 at 6 (emphasis added) (citing 18 U.S.C. § 1385), 11-16.)

### A. 28 U.S.C. § 543

In 1963, Congress passed 28 U.S.C. § 543, under which the "Attorney General

---

[4] For clarity the Court notes that both the Government and Mr. Johnson at times mistakenly cited 10 U.S.C. § 806(d)(1) instead of 10 U.S.C. § 806(e)(1). (*See* Dkt. 35 at 3; Dkt. 49 at 4, 6-9; Dkt. 43 at 4, 6.)

may appoint attorneys to assist United States attorneys when the public interest so requires." 28 U.S.C. § 543(a).[5] Mr. Johnson and amici curiae concede that 28 U.S.C. § 543 provides the Attorney General a "general grant of power to appoint SAUSAs." (Dkt. 39-1 at 11; Dkt. 43 at 3.) Amici curiae also acknowledge that SAUSAs may "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a). (*See* Dkt. 39-1 at 11.) But both Mr. Johnson and amici curiae argue that 28 U.S.C. § 543 is not an "express" exception to the PCA that specifically authorizes JAG military lawyers to be appointed to serve as SAUSAs in cases that lack a military nexus. (Dkt. 39-1 at 11-12; Dkt. 43 at 5-6.) Neither explain what they mean by "express," but instead argue that § 543 must be read "in light of the more specific restrictions in 10 U.S.C. § 973(b)" and its legislative history, which together, they argue, require a military nexus for the appointment of a JAG lawyer as a SAUSA. (Dkt. 39-1 at 12-14.) Their arguments, however, are unpersuasive for three reasons.

First, the plain language of 28 U.S.C. § 543 does not limit whom the Attorney General may appoint as a SAUSA, and amici curiae do not identify what "specific restrictions" exist in 10 U.S.C. § 973(b) that would somehow limit the Attorney General's authority pursuant to 28 U.S.C. § 543. (Dkt. 39-1 at 12.) In fact, under 10 U.S.C. § 973(b),

---

[5] This statute was amended once in 2010, but the amendment merely added authority to prosecute "Federal offenses committed in Indian country." *See* Pub. L. 111-211, Title II, § 213(a)(1), 124 Stat. 2258, 2268 (2010).

4

as amended in 1983,[6] JAG lawyers are explicitly allowed to "hold or exercise the functions of a civil office in the Government of the United States . . . when assigned or detailed to that office or to perform those functions." 10 U.S.C. § 973(b)(2)(B).

The parties and amici curiae do not dispute that 10 U.S.C. § 973(b)(2)(B) applies to the JAG lawyers in this case. (Dkt. 39-1 at 13 (citing 10 U.S.C. § 973(b)(2)(B)); Dkt. 43 at 4 (same); Dkt. 49 at 5-6 (same).) Rather, both amici curiae and Mr. Johnson point the Court to § 973(b)'s legislative history to argue that it restricts JAG lawyers to prosecuting only cases with a military nexus and therefore limits the Attorney General's authority under 28 U.S.C. § 543. But § 973(b)(2)(B), plainly states that an officer of the armed forces "may hold or exercise the functions of a civil office in the Government of the United States . . . when assigned or detailed to that office or to perform those functions." 10 U.S.C. § 973(b)(2)(B). The statute does not include language requiring a military nexus, and Mr. Johnson and amici curiae do not argue that the statutory text is ambiguous. Because the statute is unambiguous, the Court's inquiry ends with the text. *See Frost v. Lion Brand Yarn Co.*, 765 F. Supp. 3d 808, 812 (D. Minn. 2025) (explaining that the court's "task 'begins with the statute's plain language,' and when 'the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end'") (quoting *Union Pac. RR Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024)); *Davis v. Michigan Dept. of the Treasury,* 489 U.S. 803, 808 n.3 (1989) ("Legislative history is irrelevant to

---

[6] *See* Pub. L. No. 98-94, Title X, § 1002, 97 Stat. 614, 655 (1983).

the interpretation of an unambiguous statute.").

Second, the logical conclusion of Mr. Johnson and amici curiae's argument is that 10 U.S.C. § 543 *does* provide an exception to the PCA and allows JAG lawyers to prosecute civilians, but only when JAG lawyers appointed as a SAUSAs prosecute cases with a military nexus. In other words, Mr. Johnson and amici curiae argue that "Congress has authorized JAG officers to participate in certain criminal prosecutions" against civilians (Dkt. 39-1 at 11), but then also argue that the statute is not "express" enough to constitute an exception to the PCA at all.[7] *See 3M Co. v. Comm'r*, 154 F.4th 574, 582 (8th Cir. 2025) ("To state the obvious, a statute cannot both be 'silent as to the precise' question and unambiguously answer it at the same time.").

Moreover, to the extent that Mr. Johnson and amici curiae imply that "expressly authorized" as used in the PCA requires every subsequent act of Congress to contain specific reference to the PCA to be an exception, "[t]he legislature cannot derogate from its own authority or the authority of its successors." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 278-279 (2012) ("Hence there is no legal effect to a statutory provision stating that any exceptions to the statute's requirements must be express, or must specifically refer to the statute. A later legislature's power—or, for that matter, the same legislature's power—to make exceptions without specific reference, and even to make exceptions by implication, cannot be eliminated.") (citing 5 U.S.C. § 559 as

---

[7] At the hearing, Mr. Johnson's counsel maintained the argument that there is authority to appoint a JAG lawyer as a SAUSA under 10 U.S.C. § 543 and 10 U.S.C. § 806(e)(1) only if there is a military nexus. (Tr. 34-35.)

an example). Indeed, the Supreme Court, when interpreting the statutory language "except as expressly authorized by Act of Congress" in the Anti-Injunction Act, 28 U.S.C. § 2283, explained that a "federal law need not contain an express reference" to the statute "in order to qualify under the 'expressly authorized' exception." *Mitchum v. Foster*, 407 U.S. 225, 237 (1972). Nor did the Supreme Court find that a statute must "expressly authorize an injunction . . . in order to qualify as an exception," noting that several "recognized statutory exceptions" did not do so. *Id.* Mr. Johnson and amici curiae have provided no legal authority supporting the argument that, to fall under the "expressly authorized" exception of the PCA, Congress must, in all subsequent statutes, refer to the PCA explicitly. And the Court declines to impose such a requirement here.

Finally, this Court is not proceeding on a blank slate. Two circuit courts of appeals have held that 28 U.S.C. § 543(a) authorizes the Attorney General to appoint military lawyers as SAUSAs. *See United States v. Silva-Rosa*, 275 F.3d 18, 21-22 (1st Cir. 2001); *United States v. Allred,* 867 F.2d 856, 871 (5th Cir.1989)).

The First Circuit addressed whether a district court violated the 'disinterested requirement' from *Young v. United States*, 481 U.S. 787, when it refused to disqualify Navy officers appointed as SAUSAs to prosecute civilians who trespassed onto a U.S. military installation. *Silva-Rosa*, 275 F.3d at 21-22. The First Circuit concluded that *Young* was inapposite because *Young* challenged the propriety of a *court-appointed* prosecutor, and 28 U.S.C. § 543(a) allows for the appointment of Navy officers as SAUSAs and "contains no limitation on the persons whom the Attorney General may appoint.'" *Id.* at 22.

This Court acknowledges that the First Circuit in *Silva-Rosa* did not address the

7

PCA, and the trespass on the U.S. military installation provides a military nexus, but in finding 28 U.S.C. § 543(a) clear, the First Circuit cautiously noted that "asking [the] Court to dictate to the executive branch whom it can appoint to serve as its prosecutors . . . would expand the power of judicial officials to such a degree as to trigger weighty separation of powers concerns." *Silva-Rosa*, 275 F.3d at 22.

In *Allred*, the Fifth Circuit addressed a challenge to the appointment of a Navy officer as a SAUSA on a case with a military nexus. The Fifth Circuit specifically explained:

> [T]he [PCA] expressly provides an exception in "cases and under circumstances expressly authorized by the Constitution or Act of Congress." Congress, by authorizing the appointment of Special Assistant United States Attorneys and Assistant United States Attorneys to assist the Attorney General, has authorized [the JAG lawyer's] appointment. This authorization contains no limitation on the persons whom the Attorney General may appoint, nor does it indicate any limitations on the duties which the appointee may perform. Instead, section 515 indicates that the appointed attorney may "conduct any kind of legal proceedings, civil or criminal, including grand jury proceedings."

867 F.2d at 871 (citing 28 U.S.C. §§ 515, 543).

Mr. Johnson and amici curiae ask this Court to ignore *Allred*, arguing that it is non-binding authority and distinguishable because it involved the Attorney General's appointment of a JAG lawyer on a case *with* a military nexus. (Dkt. 43 at 5-6; Dkt. 39-1 at 15-16.) Although *Allred* is not binding, this Court finds its reasoning persuasive.

Congress, in passing 28 U.S.C. § 543(a), specifically granted the Attorney General the authority to appoint SAUSAs without limitation. This therefore includes the appointment of JAG lawyers as SAUSAs. In other words, this Act of Congress created the

exception contemplated in the PCA. That the JAG lawyers appointed as a SAUSAs in *Silva-Rosa* and *Allred* prosecuted cases with a military nexus is immaterial to the analysis here because the statute does not limit appointments of JAG lawyers to cases with a military nexus.

### B.  10 U.S.C. § 806(e)(1)

Mr. Johnson and amici curiae also urge the Court to ignore 10 U.S.C. § 806(e)(1) and *Allred's* finding that this statute operates as an exception to the PCA. (*See* Dkt. 39-1 at 14-15; Dkt. 43 at 4-6.)  Section 806(e)(1) provides that:

> A judge advocate who is assigned or detailed to perform the functions of a civil office in the Government of the United States under section 973(b)(2)(B) of this title may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases.

10 U.S.C. § 806(e)(1).[8]

The unambiguous text of § 806(e)(1) specifically authorizes JAG lawyers to prosecute criminal cases when assigned to an agency such as the Department of Justice ("DOJ"), and neither Mr. Johnson nor amici curiae argue to the contrary. (*See* Dkt. 39-1; Dkt. 43.) Rather, they urge the Court to reject the plain language of § 806(e)(1) because it is not an "express" exception to the PCA. (Dkt. 39-1 at 14-15; Dkt. 43 at 4-5.) Again, neither Mr. Johnson nor amici curiae explain what they mean by "express," expound on what "expressly authorized" requires under the PCA, or provide legal authority for either proposition. (*Id.*) Amici curiae merely state that § 806(e)(1) does not create an exception

---

[8] As discussed above, it is not disputed that 10 U.S.C. § 973(b)(2)(B) applies.

to the PCA because it "references neither [the PCA], civilian prosecution, civilian arrests, nor the execution of civilian laws." (Dkt. 39-1 at 15.) This argument ignores the plain text of § 806(e)(1), which explicitly allows JAG lawyers to "represent[] . . . the United States in civil and criminal cases."[9] Similarly, the court in *Allred* held that 10 U.S.C. § 806(e)(1),[10] in addition to 28 U.S.C. § 543(a), provided "authority" for the appointment of a JAG lawyer as a SAUSA despite the PCA. 867 F.2d at 871 (citing 10 U.S.C. § 806(d)(1)). And this court agrees.

In conclusion, the Court finds that the Attorney General's appointment of JAG lawyers as SAUSAs in the District of Minnesota to prosecute civilians in criminal cases is authorized by both 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1), two Acts of Congress which created exceptions to the PCA.[11]

### A. Department of Defense Regulations

Mr. Johnson and amici curiae next argue that the appointment of a JAG as a SAUSA violates binding Department of Defense regulation 32 C.F.R. § 516.4 and Army Regulation (AR) 27-10, which both require a military nexus for the special appointment. (Dkt. 39-1 at

---

[9] As discussed above in the context of 28 U.S.C. § 543(a), the Court declines to impose the requirement that Congress must refer to the PCA explicitly in all subsequent statutes for the statute to constitute an exception to the PCA.

[10] *Allred* cited 10 U.S.C. § 806(d)(1), which in 1989 contained the exact same language that now exists in 10 U.S.C. § 806(e)(1). The reorganizing of headings occurred just last year in 2025. *See* Pub.L. 119-60, Div. A, Title V, §§ 561(a), 562, Dec. 18, 2025, 139 Stat. 881, 881.

[11] Because the Court finds that these statutes operate as an exception to the PCA, it does not reach whether "whether the rule set out in *Bissonette* or some other form of guideline should be applicable to cases brought under the [PCA]." *Allred*, 867 F.2d at 861.

16; Dkt. 43 at 4-5.)[12] The Government failed to address this issue in its briefing.

"Agencies must follow their own regulations." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, (1954); and *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988)). Here, 32 C.F.R. § 516.4(e) states:

> Special Assistant U.S. Attorneys (SAUSAs) and DOJ Special Attorneys. Army judge advocates and civilian attorneys, when appointed as SAUSAs under 28 U.S.C. 543, will represent the Army's interests in either criminal or civil matters in Federal court under the following circumstances:
>
> (1)    Felony and misdemeanor prosecutions in Federal court. Army attorneys, at the installation level, after being duly appointed (See AR 27–10), will prosecute cases, *in which the Army has an interest*, in Federal court. Army attorneys who prosecute criminal cases will not represent the United States in civil litigation without authorization from Chief, Litigation Division.
>
> (2)    SAUSAs for civil litigation. By assignment of TJAG and upon the approval of the U.S. Attorney, Judge Advocates will serve within a U.S. Attorney's office to represent the government in litigation *in which the Army or DOD has an interest*. These Judge Advocates have the same general authority and responsibility as an Assistant U.S. Attorney.
>
> (3)    Special Attorneys assigned to DOJ. By assignment of TJAG and with the concurrence of the appropriate DOJ official, Judge Advocates will work as Special Attorneys for DOJ. Special Attorneys

---

[12] In his motion, Mr. Johnson cites Department of Defense ("DOD") Instructions. (*See* Dkt. 24 at 4-5 (citing Dep't of Defense Instruction 5525.07 (June 18, 2007) *and* Dep't of Defense Instruction 3025.21, enclosure 3 (Feb. 27, 2013).) But neither Mr. Johnson nor amici curiae maintained an argument involving the DOD Instructions in their post hearing briefing. (See Dkt. 39-1; Dkt. 43.) Nor did they explain how the instructions, which are internal DOD policy, create substantive rights. (See Dkt. 35 at 7-8 (citing *United States v. Leathers*, 354 F.3d 955, 962 (8th Cir. 2004).) For these reasons, the Court does not consider the DOD instructions in this analysis and instead focuses on the statutes passed by Congress and the lawfully promulgated regulations.

are authorized to represent the United States in civil litigation *in which the Army or DOD has an interest.*

(emphasis added). Similarly, in AR 27-10, Chapter 23, Prosecution of Criminal Offenses in Federal Courts, subsection 23-1(a) explains,

> This chapter contains policies and procedures for prosecutions in U.S. District Court before either a district judge or a magistrate judge for violations of Federal law committed on Army installations or violations that involve Army interests or property.

Subsection 23-4(a), for the appointment of attorneys as Special Assistant U.S. Attorneys further provides:

> Prosecutions in Federal court are a DOJ responsibility. SJAs or legal advisors often find it beneficial, however, to have one or more JA or DA Civilian attorneys appointed as *SAUSA pursuant to 28 USC 543 to prosecute crimes in which the Army has an interest.*

(emphasis added). The plain language of both regulations authorize JAG lawyers appointed as SAUSAs to prosecute cases only "in which the Army has an interest." 32 C.F.R. § 516.4(e); AR 27-10 ¶ 23-4(a).

In this case, it is undisputed that the Army has no interest in the prosecution of Mr. Johnson. (*See* Dkts. 35, 49.) And the Government failed to respond to Mr. Johnson's and amici curiae's regulatory arguments in briefing, despite the additional opportunity to do. (Dkt. 49.) Additionally, when the Court directly asked the Government about the regulations, the Government opined that the regulations do not matter. (Tr. 55.) But binding regulations do matter, and the regulations only permit JAG lawyers "to prosecute crimes in which the Army has an interest." AR 27-10, ¶ 23-4(a); *Sarail A.*, 803 F. Supp. 3d at 779; *Accardi*, 347 U.S. at 268. Consequently, the appointment of a JAG lawyer as a SAUSA to

12

prosecute Mr. Johnson violates both 32 C.F.R. § 516.4 and AR 27-10.[13]

## III.    Requested Relief

Mr. Johnson requests the Court strike the appearance of the JAG SAUSA in this case. (Dkt. 24 at 1; Dkt. 43 at 9.) At the hearing, the Government argued that there needed to be a legal basis for granting the requested relief. (Tr. 52, 53.) Neither Mr. Johnson nor amici curiae have provided the Court with legal authority that supports striking the appearance of a SAUSA when the appearance violates a regulation. Finding no authority to do so, the Court declines to grant the requested relief.

If Congress passes statutes giving the Department of Justice the authority to appoint active military personnel as SAUSAs to prosecute civilians, that is the law. And even though the Department of Defense regulations recognize that having military lawyers

---

[13]To the extent the Government attempts to sidestep the regulations' military nexus requirement by arguing that the appointment of JAG lawyers as SAUSAs in cases without a military nexus is an established practice, that argument is unpersuasive. (Dkt.  49 at 10-13.) First, the Government relies on two Office of Legal Counsel memorandums, neither of which support its contention that JAGs have historically prosecuted cases without a military nexus as SAUSAs. See *Detailing Att'ys to the Dep't of Just. to Serve as Immigr. Judges & Special Assistant United States Att'ys*, 2025 WL 3251684 (O.L.C. Oct. 23, 2025); *Detailing Att'ys to the Dep't of Just. to Serve as Immigr. Judges & SAUSAs*, 2025 WL 3251684 (O.L.C. Oct. 23, 2025). Second, the Government misconstrues the Ninth Circuit's holding in *United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000). The Ninth Circuit did not uphold the district court's denial of a motion to remove a SAUSA "without analysis," as the Government contends. In fact, the Ninth Circuit did not address the issue because the defendant did not preserve the issue for appeal. *Id.* at 995 ("Upon entering their conditional pleas of guilty, Chon, Costa, and Kapule reserved the right to appeal the district court's denial of their Motion to Suppress/Dismiss and Motion to Compel Discovery . . . they [] waived all other issues not expressly reserved for appeal."). Additionally, the *Chon* case had a military nexus as the defendants were prosecuted for trespassing onto Navy property to steal military equipment. *Id.* at 992. Thus, the briefing in *Chon* that the Government cites actually supports Mr. Johnson's argument that JAGs have historically only been used as SAUSAs to prosecute cases *with* a military nexus.

13

prosecute civilians in cases that lack a military nexus would be ill-advised, these regulations do not authorize this Court to strike the appearance of a SAUSA that the DOJ appointed. In other words, neither the PCA nor the Department of Defense's regulations provide this Court with the authority to grant Mr. Johnson's requested relief when the Department of Defense has violated its own regulations. Mr. Johnson's and amici curiae's "good policy" arguments, persuasive though they may be, cannot overcome this obstacle. This Court must apply the law. For these reasons, Mr. Johnson's motions must be denied.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings, herein, Mr. Johnon's Motion to Strike Appearance of Government's Counsel (Dkts. 24, 54) is **DENIED**.

Dated: May 1, 2026                    *s/Shannon G. Elkins*
                                      SHANNON G. ELKINS
                                      United States Magistrate Judge

14