UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Court File No. 26-mj-81 (KMM/SGE)

UNITED STATES OF AMERICA,

Plaintiff,

v.

**GOVERNMENT'S OBJECTIONS TO ORDER**

PAUL ERVIN JOHNSON,

Defendant.

On May 1, 2026, the magistrate judge issued an Order denying Johnson's Motion to Strike the Appearance of Government Counsel. (Dkt. 61.) The United States objects to the portion of the magistrate judge's Order concluding that the detail of Army judge advocates to serve as Special Assistant United States Attorneys ("SAUSAs") in this matter violated 32 C.F.R. § 516.4 and AR 27-10. The Court correctly denied Defendant's Motion to Strike Government Counsel because Congress expressly authorized the Attorney General to appoint SAUSAs and expressly authorized judge advocates detailed to a civil office to represent the United States in criminal cases. *See* 28 U.S.C. §§ 515(a), 543; 10 U.S.C. §§ 806(e)(1), 973(b)(2)(B). However, the Court erred in separately concluding that the Army violated its own regulations. That finding should be set aside for five independent reasons.

First, the appointment of judge advocates as SAUSAs is not "executing the law" within the meaning of the Posse Comitatus Act. Second, the

1

regulatory issue was unnecessary to the disposition of Defendant's motion. Third, neither 32 C.F.R. § 516.4 nor AR 27-10 limits the Army's statutory authority to detail judge advocates only to cases involving a case-specific Army interest. Fourth, even if the regulations imposed such a requirement, the determination whether a judge advocate detail serves an Army interest is a military personnel and readiness judgment committed to the Army, not a justiciable question for a criminal defendant to litigate in a collateral motion to strike counsel. And fifth, in any event, the Army has a cognizable institutional interest in the details, including training, professional development, litigation readiness, interagency integration, and the development of courtroom skills directly transferable to judge advocate duties.

I. **Appointment of Judge Advocates as SAUSAs is Not "Executing the Law" Within the Meaning of the Posse Comitatus Act.**

The Court's conclusion that the detail did not violate the Posse Comitatus Act further reinforces why the regulatory finding should not stand. As the Court correctly recognized, Congress expressly authorized both the appointment of SAUSAs and the detail of judge advocates to perform those duties. By correctly ruling that the detail fell within the statutory authorization and did not violate the PCA, the Court erred by sustaining a regulatory violation based on the same conduct.

2

The appointment of a judge advocate as a SAUSA and the performance of prosecutorial duties pursuant to that appointment do not constitute use of the military as a posse comitatus or use of the military "to execute the laws" within the meaning of the PCA. See 18 U.S.C. § 1385. The challenged detail therefore falls outside the scope of the Act altogether.

The PCA reflects the "traditional and strong resistance of Americans to any military intrusion into civilian affairs," particularly in times of peace. *Laird v. Tatum*, 408 U.S. 1, 15 (1972). From Magna Carta and the Petition of Right to the Declaration of Independence and the Bill of Rights, Anglo-American law has strongly disfavored military intrusions into civilian life. See Jennifer K. Elsea, Cong. Rsch. Serv., R42659, *The Posse Comitatus Act and Related Matters: The Use of the Military to Execute Civilian Law* at 1–5 (updated Nov. 6, 2018). This tradition is rooted in the fear that the introduction of military power into civilian life threatens to induce violent episodes. See, e.g., id. at 4 (describing the Boston Massacre as the direct result of "an independent military force [being] quartered among a disgruntled civilian population to police it").

Consistent with the history, text, and purpose of the PCA, the phrase "to otherwise to execute the law" should be interpreted narrowly to focus on the use of coercive physical force in the enforcement of laws. See *Military Support for Customs and Border Protection Along the Southern Border Under the Posse*

*Comitatus Act*, 45 Op. O.L.C. at \*4–6, \*17 (Jan. 19, 2021) (applying three different tests). see also *Fischer v. United States*, 603 U.S. 480, 487 (2024) ("One way to discern the reach of an 'otherwise' clause is to look for guidance from whatever examples come before it."). The meaning of an "otherwise" clause is informed by the specific terms that precede it. *Fischer v. United States*, 603 U.S. 480, 487 (2024).

In other words, as used by the PCA, the phrase "execute the law" does not encompass the entire scope of law execution performed by the Executive Branch in furtherance of law enforcement. See Memorandum for Walter Dellinger, Assistant Att'y Gen., Office of Legal Counsel to Jo Ann Harris, Assistant Att'y Gen., Criminal Division, Re: *Use of Military Personnel for Monitoring Electronic Surveillance at 9 (Apr. 5, 1994)* (concluding the PCA was likely not intended to reach activities lacking "coercion, regulation, or personal contact with civilian subjects").

Here, the challenged detail bears none of the traditional hallmarks described that the PCA was enacted to present. The challenged detail did not involve JAGs conducting military personnel checkpoints, conducting arrests, searches, seizures, patrols, or any other street-level traditional law-enforcement type of activity. Rather, the detailed JAGs served as a federal prosecutor, as a licensed attorney, pursuant to a lawful SAUSA

4

appointment, under the supervision and direction of the United States Attorney and performed no military power or coercive law-enforcement function.

The absence of any Posse Comitatus concern further underscores that this case involves an internal personnel assignment authorized by Congress, not an improper use of military power in civilian affairs. Since the challenged detail implicated neither the concerns underlying the PCA nor fell within the conduct prohibited by the Act, the Court's determination that no PCA violation occurred should have ended the inquiry. Accordingly, the regulatory violation finding cannot be reconciled with the Court's PCA analysis and the District Court should reject the Court's finding.

### II. The Court Should Not Have Reached the Regulatory Question After Denying the Requested Relief.

As a threshold matter, the Court should not have reached the separate regulatory question after concluding that Johnson was not entitled to the only relief he requested: striking Government Counsel. Johnson moved to strike the appearance of Government Counsel and preclude further participation in the case. The Court denied that relief, finding that Congress authorized the appointment of judge advocates as SAUSAs and that neither Johnson nor *amici* identified authority supporting the extraordinary remedy of striking a duly appointed SAUSA for an alleged regulatory violation.

That should have ended the inquiry. Federal courts do not issue advisory rulings on unnecessary questions. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions."); *see also Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (courts should avoid deciding questions unnecessary to resolution of the dispute before them). Once the Court determined that the alleged regulatory violation did not warrant striking Counsel, the additional conclusion that the Army violated 32 C.F.R. § 516.4 and U.S. Dep't of Army, Reg. 27-10, *Military Justice* (May 11, 2016)(hereinafter "AR 27-10") was unnecessary to resolving the motion. Because that finding was not essential to the judgment, the District Court should decline to adopt it.

This is particularly important because the regulatory finding concerns internal military assignment authority, Army institutional interests, and the scope of judge advocate professional development. These are matters that implicate military personnel management and readiness, and courts should avoid deciding such issues unnecessarily. *See Ashwander, 297* U.S. at 347 (Brandeis, J., concurring) (courts should not "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied"); *see also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("[J]udges are not given the task of running the Army.").

This concern is particularly acute where the challenged finding involves military personnel decisions and internal assignment authority. The Supreme Court has repeatedly cautioned that courts should avoid unnecessary intrusion into military affairs, observing that "judges are not given the task of running the Army." *Orloff*, 345 U.S. at 93-94. Having denied the relief sought by Johnson, the Court should not have proceeded to issue a separate determination regarding military personnel decisions that was unnecessary to resolve the motion before it.

**III. Neither 32 C.F.R. § 516.4 Nor AR 27-10 Prohibits the Detail of Judge Advocates in Cases Without a Case-Specific Army Interest.**

The magistrate judge concluded that "the plain language of both regulations" permits judge advocates appointed as SAUSAs to prosecute only cases "in which the Army has an interest." Respectfully, that reading overextends the text.

The starting point is the regulation's scope provision. Section 516.1 states that Part 516 "prescribes policies and procedures" for several categories of litigation, including "[d]efensive and affirmative litigation in Federal and state civilian courts where the Army or [Department of Defense] has an interest in the matter." 32 C.F.R. § 516.1(a). That language identifies the categories of cases for which Part 516 supplies Army litigation-management

7

procedures. It does not purport to define the outer limits of the Secretary of Defense's, The Judge Advocate General ("TJAG"), or the Attorney General's statutory authority to detail or appoint attorneys. Nor does it state that details outside those categories are prohibited, void, *ultra vires*, or incapable of supporting a SAUSA appointment under 28 U.S.C. § 543.

The same is true of 32 C.F.R. § 516.4(e). That provision explains how Army attorneys, when appointed as SAUSAs under 28 U.S.C. § 543, represent Army interests in federal court. It states that Army attorneys at the installation level, after being duly appointed, "will prosecute cases, in which the Army has an interest, in Federal court." 32 C.F.R. § 516.4(e)(1). Read in context, that language implements Part 516's litigation procedures for cases within Part 516's defined scope. It does not say that TJAG lacks authority to assign a Judge Advocate to a detail otherwise authorized by Congress. It does not say that a judge advocate may "only" serve as a SAUSA in an Army-interest case. And it does not purport to nullify the Attorney General's independent statutory authority to appoint attorneys to assist United States Attorneys when the public interest so requires. *See* 28 U.S.C. § 543(a).

Likewise, AR 27-10 does not impose the limitation the magistrate judge found. Paragraph 23-1(a) states that Chapter 23 contains policies and procedures for federal prosecutions "for violations of Federal law committed on Army installations or violations that involve Army interests or property." AR

27-10, para. 23-1(a). Again, that language identifies the matters governed by that chapter; it does not state that judge advocates are prohibited from being detailed to DOJ for other matters when separately authorized by statute. Paragraph 23-4(a) provides that "SJAs or legal advisors often find it beneficial" to have judge advocates appointed as SAUSAs "to prosecute crimes in which the Army has an interest." AR 27-10, para. 23-4(a). The phrase "often find it beneficial" is descriptive, not prohibitory. It does not create a condition precedent for all judge advocate details, much less override statutory authority conferred by Congress.

The magistrate judge's contrary interpretation also creates unnecessary tension with the statutes the Court correctly held authorized the detail. Congress provided that the Attorney General "may appoint attorneys to assist United States attorneys when the public interest so requires." 28 U.S.C. § 543(a). Congress further provided that a judge advocate detailed to perform the functions of a civil office "may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases." 10 U.S.C. § 806(e)(1). And Congress authorized officers of the armed forces to "hold or exercise the functions of a civil office in the Government of the United States" when "assigned or detailed to that office or to perform those functions." 10 U.S.C. § 973(b)(2)(B).

Regulations should not be interpreted to create a conflict with the statutory scheme where another reasonable reading is available. *See United States v. Lachman*, 387 F.3d 42, 52 (1st Cir. 2004) (courts should select the interpretation of a regulation that is most consistent with the regulation's text and statutory scheme); *see also Morton v. Mancari*, 417 U.S. 535, 551 (1974) (courts must strive to give effect to allegedly overlapping enactments rather than treat them as conflicting). The better reading is that 32 C.F.R. § 516.4 and AR 27-10 govern Army-interest prosecutions handled under those provisions; they do not prohibit other details independently authorized by Congress.

The magistrate judge relied on the *Accardi* principle, but *Accardi* does not change the analysis. *Accardi* requires agencies to follow their own binding regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954). It does not permit a court to expand the text of a regulation, convert an applicability provision into a prohibition, or infer a restriction that the regulation does not contain. Nor does *Accardi* allow a criminal defendant to transform internal military assignment guidance into a basis for adjudicating the validity of TJAG's personnel decisions where no regulation creates a substantive right for the defendant. *See United States v. Leathers*, 354 F.3d 955, 962 (8th Cir. 2004) (declining to dismiss where defendant failed to show violation of internal policy created enforceable rights or prejudice).

Accordingly, neither 32 C.F.R. § 516.4 nor AR 27-10 prohibited the detail at issue, and the finding of a regulatory violation should be rejected.

**IV. Even If the Regulations Required an Army Interest, the Determination Whether the Detail Serves an Army Interest Is a Nonjusticiable Military Judgment.**

Even assuming the regulations required an Army interest, the magistrate judge erred by deciding for herself that the Army lacked one. Whether a judge advocate detail serves the Army's institutional interests is a military personnel, training, readiness, and force-management determination. Courts are not institutionally equipped to second-guess that determination in a criminal motion to strike counsel.

The Supreme Court has repeatedly cautioned against judicial interference in military assignments and personnel decisions. In *Orloff*, the Court rejected an attempt to obtain judicial review of an Army doctor's duty assignment, explaining that "judges are not given the task of running the Army." *Orloff*, 345 U.S. at 93. The Court emphasized that "[t]he military constitutes a specialized community governed by a separate discipline from that of the civilian" and that "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Id*. at 94. The Court further observed that it had "found no case where this Court has assumed to revise duty orders as to one lawfully in the service." *Id*.

11

The Eighth Circuit has applied the same principle. The Eighth Circuit has held that "[t]raditional notions of judicial restraint and of the separation of powers" require courts to refrain from interfering in military personnel matters because courts lack expertise in those areas and because responsibility for such matters is delegated to the political branches. *Wilson v. Walker*, 777 F.2d 427, 429 (8th Cir. 1985). Likewise, the Eighth Circuit explained that "judicial deference . . . is at its apogee" when courts consider challenges to military action, and quoted the Supreme Court's warning that "it is difficult to conceive of an area of governmental activity in which the courts have less competence" than military judgments concerning "the composition, training, equipping, and control of a military force." *Richenberg v. Perry*, 97 F.3d 256, 261 (8th Cir. 1996) (quoting *Rostker v. Goldberg,* 453 U.S. 57, 70 (1981), and *Gilligan v. Morgan,* 413 U.S. 1, 10 (1973)).

That deference applies directly here. The question is not whether the Court would have chosen to detail a Judge Advocate to this prosecution. The question is whether the Army, through TJAG and the Secretary of Defense, could determine that the detail served Army interests. That determination implicates training, litigation readiness, personnel development, interagency coordination, and the Army's ability to maintain a capable judge advocate force. These are precisely the types of "complex, subtle, and professional

decisions" that courts lack the knowledge to second-guess. *Gilligan*, 413 U.S. at 10.

Nor are there judicially manageable standards for deciding when the Army's interest in a judge advocate detail is sufficiently direct, substantial, or case-specific. The magistrate judge's finding appears to assume that an Army interest exists only when the underlying offense occurred on an Army installation, involved Army property, or directly implicated Army personnel. But neither 32 C.F.R. § 516.4 nor AR 27-10 defines "Army interest" in those narrow terms. If "Army interest" includes training, readiness, or professional development, as the Army reasonably determined, then the Court lacks a manageable standard for weighing that institutional interest against Johnson's preferred narrower definition. *See Baker v. Carr*, 369 U.S. 186, 217 (1962) (identifying, as political-question factors, "a lack of judicially discoverable and manageable standards" and the need for "a policy determination of a kind clearly for nonjudicial discretion").

The magistrate judge also characterized it as "undisputed" that the Army lacked an interest in this prosecution. But the Government never conceded that point. The Government's position was that neither the governing statutes nor the cited regulations imposed a case-specific Army-interest requirement. That position is not equivalent to conceding the absence of an Army interest. More fundamentally, whether a particular detail advances

13

Army interests in litigation readiness, force development, professional education, interagency coordination, or personnel management is a military judgment entrusted to the responsible military authorities. Even *if* the regulations required an Army interest, the Court possessed neither judicially manageable standards nor institutional ability to substitute its own assessment of those interests for that of the Army.

### V. In Any Event, the Army Has a Cognizable Institutional Interest in the Detail.

Even if the Court reaches the merits of the Army-interest question, the record supports the conclusion that the Army has an interest in the detail. That interest is not limited to the facts of the Johnson's underlying offense. The Army's interest includes the training, professional development, readiness, and litigation proficiency of its judge advocates.

Judge advocates serve as prosecutors, defense counsel, legal advisors, administrative law attorneys, operational law attorneys, and litigation counsel in matters that require courtroom judgment, witness preparation, motion practice, evidentiary analysis, negotiation, ethical decision-making, and the exercise of prosecutorial discretion. A federal SAUSA detail develops precisely those skills. The training value of such details is not theoretical. The Office of Legal Counsel has recognized that SAUSA details may provide valuable training and enhance litigation and courtroom skills that attorneys can apply

14

to their ordinary duties after the detail concludes. *See Detailing Attorneys to the Department of Justice to Serve as Immigration Judges and Special Assistant United States Attorneys*, 2025 WL 3251684, at \*8–9 (O.L.C. Oct. 23, 2025).

The Army's institutional interest extends beyond the development of any individual attorney. The Judge Advocate General's Corps depends upon experienced litigators to serve as trial counsel, defense counsel, special victim prosecutors, administrative law attorneys, operational law advisors, appellate counsel, and legal advisors to commanders. Federal prosecution details cultivate courtroom advocacy, evidentiary analysis, witness preparation, motion practice, negotiation, ethical decision-making, and coordination with federal agencies. These skills directly enhance the Army's ability to provide legal support across its missions and strengthen the readiness and effectiveness of the Judge Advocate General's Corps as an institution.

The Army also has a broader readiness interest in maintaining a corps of attorneys capable of operating effectively in complex litigation environments. Exposure to federal criminal practice develops professional competencies that are transferable across military justice, administrative litigation, operational law, and national security practice. Accordingly, the detail serves not merely the professional development of the individual

15

detailee, but the Army's institutional interest in maintaining a highly trained and litigation-ready legal force.

Department of Defense policy likewise recognizes that personnel details may advance important governmental and institutional interests. *See* DoDI 1000.17, para. 3a. The Secretary of Defense has authorized the longstanding practice of detailing judge advocates to serve as SAUSAs, reflecting a determination that such assignments promote the effectiveness of the United States Government while simultaneously enhancing the litigation experience, professional development, and readiness of military attorneys. That policy judgment regarding the appropriate use of military legal personnel is entitled to substantial deference. The Court should not substitute its own assessment of the value of those assignments for the judgment of the military authorities charged with managing and developing the Judge Advocate General's Corps.

The magistrate judge's narrower view of "Army interest" effectively limits that phrase to a case-specific operational or property nexus. But the regulations do not define the phrase so narrowly, and the Army's institutional interests are broader. The Army has an interest in the capability, readiness, training, and professional development of its attorneys. Because the detail advances those interests, the finding that the Army had "no interest" in the detail was erroneous.

16

## CONCLUSION

The Court correctly denied Defendant's motion to strike Government Counsel. But the Court should decline to adopt the unnecessary and erroneous finding that the Army violated 32 C.F.R. § 516.4 and AR 27-10. Those regulations do not prohibit judge advocate details independently authorized by Congress. Any determination of Army interest is a military personnel and readiness judgment committed to the Army. And, in any event, the Army has a cognizable institutional interest in training, developing, and maintaining litigation-ready judge advocates. The District Court should therefore reject the finding in the Order that the detail violated Army regulations.

Dated: June 5, 2026                          Respectfully Submitted,

                                             DANIEL N. ROSEN
                                             United States Attorney

                                             _s/William L. Richards_
                                             BY: William L. Richards
                                             Attorney ID No.: 5445002NY
                                             Special Assistant U.S. Attorney
                                             300 South 4th Street, Suite 600
                                             Minneapolis, MN 55415
                                             T: 612.664-5600 | C: 202-230-8076
                                             Email: William.Richards@usdoj.gov