United States of America,

        Plaintiff,

v.

Paul E. Johnson

        Defendant.

Court File No. 26-mj-81

**DEFENDANT'S OBJECTIONS TO ORDER DENYING MOTION TO STRIKE APPEARANCE**

## **INTRODUCTION**

The separation of civilian and military authority is a cornerstone of our democracy. Our longstanding prohibition on civilian government use of the military for domestic law enforcement distinguishes the United States from authoritarian countries like China and Russia. In 1870, Congress enacted the Posse Comitatus Act ("PCA") to cement the barrier between the military and domestic law enforcement by criminalizing civilian use of the military to enforce the law. For over a century, that barrier held. Lately, it has begun to crumble. In an unprecedented series of events, the Department of Justice has "detailed" hundreds of Judge Advocate General ("JAG") officers to prosecute civilians in civilian court, for purely civilian offenses, in federal district courts around the country, including the District of Minnesota, and including in this case.

Exceptions do exist to the PCA. For one, actions taken by the military in conjunction with civilian law enforcement but for a military purpose – prosecuting civilians who

commit crimes on military bases, for example – do not violate the PCA. Further, under very limited circumstances, Congress can create an exception to the PCA by passing a law that "expressly authorizes" the exception.

Defendant has brought a Motion to Strike the Appearance of the JAG attorneys prosecuting him in this case because their participation violates the PCA. Magistrate Judge Elkins denied the motion, concluding that two Acts of Congress "expressly authorize" JAG officer prosecution of civilians in civilian court even absent any military purpose or nexus. She concluded that 28 U.S.C. § 543 expressly authorizes the DOJ to appoint JAGs as SAUSAs "without limitation," and that 10 U.S.C. § 806(e)(1) – a provision in the Uniform Military Code of Justice – permits JAG officers to prosecute civilians under such appointments.

But with all due respect to Judge Elkins, she erred in this conclusion. As discussed below, neither statute "expressly authorizes" DOJ use of JAG officers to prosecute civilians absent some military purpose behind the prosecution. 28 U.S.C. § 543 is a general grant of authority that does not even mention the military, let alone "expressly authorize" the use of JAG officers to participate in purely civilian prosecutions. The legislative history of 10 U.S.C. § 806(e)(1) confirms that it encompasses only JAG prosecutions of civilians undertaken for a military purpose which therefore do not violate the PCA. These statutes fail the applicable test for determining whether an Act of Congress expressly authorizes an exception to the PCA allowing JAG prosecution of civilians absent any military nexus. Finally, as Judge Elkins correctly concluded, the Army's own regulations prohibit JAG officer involvement in purely civilian prosecutions like this one, and Lt. Richards'

prosecution of Defendant in violation of these regulations would be ultra vires and should thus be precluded.

For these reasons, Defendant respectfully requests that the Court reverse Judge Elkins' Order and strike the appearance of Lt. Richards or any other JAG officer appearing in this case to prosecute Defendant.

## BACKGROUND

On January 26, 2026, Defendant was charged by complaint with assault on a federal officer under 18 U.S.C. § 111. ECF No. 1. On February 11, 2026, the government filed a misdemeanor information charging Defendant with violating 18 U.S.C. § 111, thereby superseding and replacing the initial complaint. ECF No. 20.

Defendant moved the Court to strike the appearance of government's counsel (and Army JAG attorney) Michael Hakes-Rodriguez, as DOJ's appointment of Lt. Hakes-Rodriguez violated the Posse Comitatus Act because he is an active-duty military officer. ECF No. 24. On April 6, 2026, the government filed a Notice of Attorney Substitution substituting attorney Lt. William Richards for Lt. Hakes-Rodriguez, who is being detailed to a new assignment in another district. ECF No. 52. Lt. Richards is also a JAG attorney, and Defendant moved to strike his appearance for the same reasons set forth in Defendant's motion to strike Lt. Hakes-Rodriguez's appearance.[1] ECF No. 54.

---

[1] As of the parties' oral argument on this motion, approximately 25 JAG officers had been detailed to the District of Minnesota. ECF No. 60 at 62:20-25. Lt. Hakes-Rodriguez had been detailed to the District of Minnesota but after a 90-day rotation was being sent to Memphis by DOJ, to be replaced by Lt. Richards. ECF No. 60 at 63:2-10.

The parties briefed and argued the issue, and Judge Elkins permitted a group of amici composed of former military officers and federal prosecutors to file an amicus brief in support of Defendant's motion. *See* ECF Nos. 35, 39, 43, 49 and 51. After reviewing these materials and hearing argument, Judge Elkins issued an Order Denying Defendant's Motion to Strike. ECF No. 61. The Judge Elkins concluded, "the Attorney General's appointment of JAG lawyers as SAUSAs in the District of Minnesota to prosecute civilians in criminal cases is authorized by both 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1), two Acts of Congress which created exceptions to the PCA." ECF No. 61 at 10. Defendant has timely filed these objections to Judge Elkins's Order. ECF No. 63.

## ARGUMENT

A party may seek review of a magistrate judge's order on a non-dispositive motion by filing objections pursuant to Local Rule 72.2(a). The district court must overrule the magistrate judge's order if it is "contrary to law." L.R. 72.2(a)(3)(A). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation omitted).

I.     **THE POSSE COMITATUS ACT PROHIBITS CIVILIAN USE OF THE MILITARY TO ENFORCE CIVILIAN LAWS.**

The Posse Comitatus Act provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C.S § 1385.

In short, the PCA prohibits "the direct active use of federal troops by civil law enforcement officers to enforce the laws of this nation." *United States v. Wooten*, 377 F.3d 1134, 1139 (10th Cir. 2004). This blanket prohibition applies to all civilian law enforcement authorities absent an "expressly authorized" exception that would otherwise permit use of the military under specifically identified circumstances. The purpose of this prohibition "is to uphold the American tradition of restricting military intrusions into civilian affairs, except where Congress has recognized a special need for military assistance in law enforcement." *United States v. Al–Talib,* 55 F.3d 923, 929 (4th Cir. 1995); *see also Laird v. Tatum*, 408 U.S. 1, 15 (1972) (recognizing "a traditional and strong resistance of Americans to any military intrusion into civilian affairs" that "has deep roots in our history"); *Newsom v. Trump*, 797 F. Supp. 3d 1092, 1111 (N.D. Cal. 2025) (detailing the legislative, political, and historical foundations of the PCA).

## II. ACTIONS BY MILITARY OFFICERS TAKEN WITH A SPECIFIC MILITARY PURPOSE DO NOT VIOLATE THE PCA.

"In construing the PCA, federal courts have articulated two common law exceptions: the military purpose doctrine and the indirect assistance doctrine. Under the military purpose doctrine, federal military personnel involved in law enforcement operations do *not* violate the PCA if the operations have a *specific military purpose*." Lieutenant Colonel Mary J. Bradley *et. al.*, *The Posse Comitatus Act: Does It Impact the Department of Defense During Consequence Management Operations?,* ARMY LAWYER, October 2007, at 68, 72.

As one court explained, "the prohibitions contained in the Posse Comitatus Act and in 10 U.S.C. § 375 do not now, nor were they ever intended to, limit military activities whose *primary purpose* is the furtherance of a military (or foreign affairs) function, regardless of benefits which may incidentally accrue to civilian law enforcement." *United States v. Thompson*, 30 M.J. 570, 573–74 (A.F.C.M.R. 1990), *aff'd*, 33 M.J. 218 (C.M.A. 1991); *see also United States v. Hitchcock*, U.S. App. LEXIS 15726, 13 (9th Cir. 2002) (noting that military involvement in civil law enforcement activities is permissible if undertaken "for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities"); *United States v. Chon*, 210 F.3d 990, 994 (9th Cir. 2000) (holding that "NCIS agents' activities were permissible because there was an independent military purpose for their investigation - the protection of military equipment"); *Applewhite v. United States Air Force*, 995 F.2d 997, 1001 (10th Cir. 1993) ("Since there was an independent military purpose to OSI's conduct, there was necessarily no willful use of any part of the Air Force as a posse to execute civilian laws .... [t]he agents went off base to 'sting' military personnel, not civilians.").

In other words, when the military acts to assist civilian law enforcement and that action is taken with a primarily military purpose, the PCA is not violated because such acts fall within the military purpose doctrine. As one military lawyer explained in 1975:

> Many law enforcement activities performed by military officials benefit the civilian community as well as the military command. This dual purpose "execution of the law" can, and often does, violate the [Posse Comitatus] Act. Where the primary purpose of the action is to fulfill a legitimate military requirement, no violation of the Act occurs even though civil law enforcement is incidentally aided. However, where action by military

officials is taken primarily in aid of civil authorities, the Act is violated even though the military command is aided incidentally.

Major Clarence I. Meeks III, USMC, *Illegal Law Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act*, 70 Mil. L. Rev. 83, 124–25 (1975).[2]

Thus, "[w]hen confronted with a PCA question, [one] must first determine whether the action falls under the military purpose doctrine . . ." Major Jeremiah J. Cioffi, *A Modernizing Posse Comitatus Doctrine*, 2022-4 ARMY LAW. 36, 41. If it does, the PCA is not violated, and no further inquiry is necessary. If the action does not fall under the military purpose doctrine, then one must determine whether an "expressly authorized" statutory exception to the PCA exists that would permit the action.

Here, Mr. Johnson's prosecution serves no military purpose. *See* ECF No. 61 at 12 ("…it is undisputed that the Army has no interest in the prosecution of Mr. Johnson."). He is a civilian, being prosecuted in civilian court, for an alleged offense against another

---

[2] *See also* Major Jeff A. Bovarnick, *Can A Commander Authorize Searches & Seizures in Privatized Housing Areas?*, 181 MIL. L. REV. 1, 33–34 (2004) ("The Military Purpose Doctrine, through case law, further expands the commander's authority over civilians, both on and off the installation, for law enforcement actions that are performed primarily for a military purpose."); Leroy C. Bryant, Office of the Staff Judge Advocate Headquarters, 8th Infantry Division, *The Posse Comitatus Act, The Military, And Drug Interdiction: Just How Far Can We Go?*, ARMY LAW., December 1990, at 6 ("The Judge Advocate General of the Army has opined that a military law enforcement action that provides an incidental benefit to civilian law enforcement does not violate the PCA as long as the "primary purpose of the action is to fulfill a legitimate military requirement."); Major Matthew J. Gilligan, *Opening the Gate?: An Analysis of Military Law Enforcement Authority over Civilian Lawbreakers on and Off the Federal Installation*, 161 MIL. L. REV. 1, 3 (1999) ("[T]he Military Purpose Doctrine . . . permits actions taken for the primary purpose of furthering a military function, regardless of the incidental benefits to civil authorities.").

civilian, that took place on public property with no connection to the military. Because there is no military purpose or military nexus connected with Mr. Johnson's prosecution, it violates the PCA absent some expressly authorized statutory exception. As discussed below, no such statutory exception exists.

**III.    NEITHER STATUTE AT ISSUE HERE EXPRESSLY AUTHORIZES DOJ USE OF JAG OFFICERS TO PROSECUTE CIVILIANS ABSENT A MILITARY NEXUS.**

> **A.    Congress Only "Expressly Authorizes" an Exception to the PCA When It Announces the Exception Explicitly, Particularly, and with Specificity.**

Congress was clear about what constitutes an exception to the Posse Comitatus Act: an express provision by either the Constitution or by Congress itself. *Newsom v. Trump*, 797 F. Supp. 3d 1092, 1122 (N.D. Cal. 2025). The plain meaning of "expressly" is "explicitly," "particularly," and "specifically." Merriam-Webster Dictionary (2026). This meaning is consistent with how the drafters of the PCA understood the term. The word "expressly" was added to the statute to address concerns of the House manager, who "believed that retention of the word 'expressly' was important to prevent the use of the Army wherever implied authority could be inferred . . . ." Jennifer K. Elsea, Cong. Rsch. Serv., R42659, *The Posse Comitatus Act and Related Matters: The Use of the Military to Execute Civilian Law* 28–29 (Nov. 6, 2018). Thus, in order for Congress to authorize an exception to the PCA, it must do so, explicitly, particularly, and with specificity. Under the plain language of the statute, authority to violate it cannot be implied or inferred.

**B.** **The Supreme Court's Anti-Injunction Act Jurisprudence Provides a Framework For Analyzing Statutory Exceptions to the PCA.**

Scant case law addresses the PCA, let alone the application of its "expressly authorized" exception language. But as Judge Elkins identified in her Order, the Supreme Court has addressed identical language contained in another statute – the Anti-Injunction Act. ECF No. 61 at 7.

The Anti-Injunction Act "imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding . . . ." *Mitchum v. Foster*, 407 U.S. 225, 229 (1972). Like the PCA, however, the Anti-Injunction Act provides that an Act of Congress may "expressly authorize" an exception to that ban.

It states:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

In *Mitchum*, the Supreme Court laid out the rules to apply when determining whether an Act of Congress "expressly authorizes" an exception to the Anti-Injunction Act. First, the Court held, "in order to qualify under the 'expressly authorized' exception of the anti-injunction statute, a federal law need not contain an express reference to that statute." *Id.* at 237. Second, a federal law need not expressly authorize an injunction of a state court proceeding to qualify as an exception. *Id.* Third, "in order to qualify as an 'expressly authorized' exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity,

that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Id.* In short: "The test . . . is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id.*

In other words, "express authorization" occurs only when an Act of Congress is, "on its face and in every one of its provisions . . . totally incompatible with the prohibition [to which the exception applies]." Here, then, for a statute to "expressly authorize" DOJ to use JAG officers to prosecute civilians in civilian court for purely civilian offenses – conduct against which the PCA imposes an "absolute ban" absent some statutory exception – the statute must "on its face and in every one of its provisions . . . [be] totally incompatible" with the PCA. Neither 28 U.S.C. § 543 nor 10 U.S.C. § 806(e)(1) surmount this bar.

In conducting this analysis, the Supreme Court looks to the legislative history of the statute at issue to determine whether it "could be given its intended scope" only through an exception to the Anti-Injunction Act. For example, in *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 624 (1977) the Court explained:

> [the Clayton Act] does not meet the second part of the *Mitchum* test; it is not an "Act of Congress . . . (which) could be given its intended scope only by the stay of a state court proceeding," Crucial to our determination in *Mitchum* . . . [was] our review of the legislative history of s 1983; similar review of the legislative history underlying s 16 demonstrates that that section does not meet this aspect of the *Mitchum* test.

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 632–33 (1977).

Further, in *Vendo*, the Supreme Court observed that the few statutes which it had recognized as "expressly authorized" exceptions to the Anti-Injunction Act, "while not directly referring to s 2283, have nonetheless <u>explicitly authorized</u> injunctive relief against state-court proceedings. . . . By limiting the statutory exceptions of s 2283 and its predecessors to these few instances, we have clearly recognized that the Act countenancing the federal injunction must necessarily interact with, or focus upon, a state judicial proceeding." *Vendo*, 433 U.S. at 640-641.

In sum, when considering whether an Act of Congress "expressly authorizes" an exception to the absolute prohibition of the Anti-Injunction Act, the Supreme Court examines the legislative history of the statute and the circumstances of its enactment to determine its "intended scope." The Supreme Court then asks whether the Act of Congress "could be given its intended scope only by the stay of a state court proceeding" in contravention of the Anti-Injunction Act.

The *Mitchum/Vendo* test is appropriate for use here. The PCA uses nearly identical language to the Anti-Injunction Act. Mirroring the Anti-Injunction Act, the PCA imposes an absolute ban on civilian use of the military to enforce civilian laws absent an Act of Congress expressly authorizing some exception to that ban. And like the Anti-Injunction Act, the PCA is tied to fundamental American principles about the separation of powers and how we organize our democracy that cannot be derogated lightly.

**C.      The Supreme Court's Implied Repeal Doctrine Is Instructive Here.**

The Supreme Court's case law discussing when a statute can overrule a prior statute by implication is also instructive here. It applies a similar analytic framework as *Mitchum* and *Vendo*, though it does so in the absence of statutory language requiring that any exception to the prior statute be "expressly authorized."

In *Morton v. Mancari*, for example, the Supreme Court considered whether the Equal Opportunity Act, which purported to eliminate racial hiring preferences, had effectively repealed a prior statute requiring that the BIA grant hiring preference to Native Americans. 417 U.S. 535, 537-538 (1974).

The Supreme Court concluded it had not, explaining: "In the absence of some affirmative showing of an intention to repeal [an earlier statute], the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable . . . ." *Id.* In reaching this conclusion, the Supreme Court observed, "there is nothing in the legislative history . . . that indicates affirmatively any congressional intent to repeal the 1934 preference. Indeed, as explained above, there is ample independent evidence that the legislative intent was to the contrary." *Id.* at 550.

Thus, the Supreme Court's "implied repeal" doctrine mirrors its analysis in the Anti-Injunction Act cases. Under both approaches, the Supreme Court looks to whether the later statute is entirely incompatible with the prior statute before deciding whether the later statute effectuated a repeal or expressly authorized an exception to it. And under both approaches, the party arguing for repeal or exception has a high burden to meet, and the legislative history and background of the later statute's enactment is critical to the analysis.

*E.g., Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow.") (internal quotations omitted).

> **D.     28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1) Do Not Satisfy the *Mitchum/Vendo* Test With Respect to the PCA.**

With these principles in mind, we can turn to consideration of the statutes at issue here. Judge Elkins concluded, "the Attorney General's appointment of JAG lawyers as SAUSAs in the District of Minnesota to prosecute civilians in criminal cases is authorized by both 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1), two Acts of Congress which created exceptions to the PCA." ECF No. 61 at 11. Evaluating these statutes under the framework set forth in *Mitchum* and *Vendo* demonstrates, however, that neither statute "expressly authorizes" an exception to the PCA's absolute prohibition on DOJ use of JAG officers to prosecute civilians absent some military purpose or nexus.

> **a. 28 U.S.C. § 543 does not expressly authorize DOJ to use JAG officers to prosecute civilians in civilian court.**

28 U.S.C. § 543 states:

> The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires, including the appointment of qualified tribal prosecutors and other qualified attorneys to assist in prosecuting Federal offenses committed in Indian country.

Judge Elkins concluded that 28 U.S.C. § 543 expressly authorizes DOJ to use JAG officers as SAUSAs to prosecute civilians in civilian court in cases with no military nexus. In reaching this conclusion, Judge Elkins reasoned, "the plain language of 28 U.S.C. § 543

does not limit whom the Attorney General may appoint as a SAUSA." ECF No. 61 at 4. But Judge Elkins's analysis turns the PCA "expressly authorized" language upside down. As Amici point out, "the absence of limitation is not express PCA authorization." ECF No. 68-1 at 17.

Section 543 provides a general grant of authority to the Attorney General to appoint non-DOJ lawyers as SAUSAs. It does not, however, reference the military, let alone "explicitly," "particularly," and "specifically" articulate that DOJ can use JAG officers to prosecute civilians in civilian court. Thus, on its face the statute does not "expressly authorize" such use in contravention of the PCA's absolute prohibition.

Applying the Supreme Court's test for "express authorization" in *Mitchum* and *Vendo* leads to the same conclusion. While *Vendo* and *Mitchum* arise in the Anti-Injunction Act context, the Supreme Court's reasoning reflects a disciplined approach to "expressly authorized" exceptions: a statute does not qualify merely because it is related to the subject matter; it must be the kind of legislation *that requires the exception* to achieve its intended scope.

While 28 U.S.C. § 543 includes the possibility of military lawyers serving as SAUSAs while detailed to DOJ, nothing in that description establishes that section 543 can be given its intended scope *only* by authorizing the military to engage in direct civilian law enforcement activity prohibited by the PCA. Therefore, under the narrow "express authorization" test established in *Mitchum/Vendo*, section 543 does not expressly authorize DOJ's use of JAG officers to prosecute civilians in civilian court for purely civilian offenses.

Notably, the House Judiciary Committee, which has primary legislative and oversight jurisdiction over the DOJ, has stated in an official report accompanying legislation: "The Committee is fully aware that exceptions to the 'Posse Comitatus' prohibition involving military personnel as participants in civilian law enforcement activities must be narrow and should be authorized only when absolutely necessary." H.R. Rep. 97-624, at 10–11 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 3229, 3238–39. This clear statement of legislative intent runs counter to Judge Elkins's conclusion – and the government's arguments thus far – that section 543 creates a broad authority for DOJ to use military lawyers as SAUSAs for any purpose and without any practical limitation on the number, circumstances, context, duties, supervision, or authority vested in those JAG SAUSAs. Under the government's (and Judge Elkins's) reading of section 543, DOJ could fire all the civilian line attorneys in the District of Minnesota and replace them with JAG officers, an absurd and obviously unlawful prospect at odds with our historical aversion to military involvement in civil affairs, but one nonetheless consistent with Judge Elkins's Order.

For all these reasons, Judge Elkins's conclusion that 28 U.S.C. § 543 authorizes the Department of Justice to use JAG officers to prosecute civilians in civilian court is contrary to law and should be overruled.

**b. 10 U.S.C. § 806(d)(1) does not expressly authorize the DOJ to use JAG officers to prosecute civilians in civilian court with no military purpose.**

i. Congress' intended scope of 806(e)(1) and 973(b) is limited to JAG prosecutions of civilians that have a military purpose or nexus.

10 U.S.C. § 806(e)(1) states:

A judge advocate who is assigned or detailed to perform the functions of a civil office in the Government of the United States under section 973(b)(2)(B) of this title may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases.

10 U.S.C. § 973(b)(2)(B) states:

An officer to whom this subsection applies may hold or exercise the functions of a civil office in the Government of the United States . . . when assigned or detailed to that office or to perform those functions.

The legislative history of 10 U.S.C. § 806(e)(1) and 973(b) shows that the "intended scope" of these statutes did not include authorizing DOJ to use JAGs in direct contravention of the PCA.

A House report accompanying the enactment of section 973(b) stated it that its purpose was to "clarify the limitation on performance of civil functions by commissioned officers contained in section 973 of title 10, United States Code." H.R. CONF. REP. 98-352, 233, 1983 U.S.C.C.A.N. 1160, 1170. The House Report further stated:

The clarification was necessary to permit military personnel assigned to Judge Advocate General's Corps duties to continue assisting attorneys in the Department of Justice *with cases related to military installations and other military matters*. The clarification is not intended to encourage substitution of military officers for civilian personnel *in areas unrelated to the military*.

*Id.* (emphasis added).

The Senate report said essentially the same thing. *See* S. Rep. No. 98-174, at 232–33 (1983), *as reprinted in* 1983 U.S.C.C.A.N. 1081, 1121–22. It explained:

> By specific agreement, since 1942 military attorneys have been authorized by United States Attorneys to prosecute before federal civilian courts petty offenses committed on military installations. In 1982, more than 70,000 such offenses were prosecuted by military attorneys performing as Special United States Attorneys before United States Magistrates.
>
> . . . .
>
> The committee has been advised [that the OLC] has recently issued an opinion that the practice of appointing military commissioned officers as special assistant United States Attorneys is now considered to offend the prohibitions of section 973(b) of Title 10, United States Code. However, that same opinion suggests that legislation be sought to amend section 973(b) to permit the continuation of this longstanding and successful practice.
>
> Therefore, the Committee recommends a provision to amend section 973(b) of title 10 to permit the continuation of this practice of utilizing military attorneys as Special Assistant United States Attorneys. The committee provision would completely rewrite section 973(b) to conform the language of that section to the interpretation having previously been given by the executive branch to the existing section. *This provision does not sanction or endorse any use of military attorneys beyond that permitted under that interpretation.*

S. REP. 98-174, 232-33, 1983 U.S.C.C.A.N. 1081, 1122-23 (emphasis added).

Notably, neither of these reports even mention the PCA, let alone suggest that the intended scope of section 973(b) is to expressly authorize an exception to the PCA allowing the DOJ to use JAG officers to prosecute civilians in civilian court for purely civilian offenses. Rather, the reports are clear: Congress intended to codify the existing understanding and arrangement by which JAG officers sometimes worked as SAUSAs on cases with a military nexus, all of which is consistent with the military purpose doctrine. Congress was careful to note in both the House Report and the Senate Report that the

intended scope of the legislation *did not* include expanding the role of military officers serving as SAUSAs beyond the historical practice of prosecutions with a military purpose. *See also* H.R. Conf. Rep. No. 99-1001, at 493 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 6529, 6552 (explaining that the scope of 10 U.S.C. § 806(e)(1) was limited to situations where JAGs were detailed to DOJ to assist with "litigation involving the Department of Defense").

> ii. Section 806(e)(1) does not expressly authorize DOJ to use JAG officers to prosecute civilians in civilian court absent a military purpose.

Sections 806(e)(1) and 973(b), even when read together, do not expressly authorize the DOJ to use JAG officers to prosecute civilians in civilian court in direct contravention of the PCA. First, the plain language of 10 U.S.C. § 806(e)(1) provides that JAG officers detailed to a civil office may only perform "such duties as *may be requested* by the agency concerned . . ." (Emphasis added.) DOJ may request JAG officers to participate in cases with a military nexus consistent with the military purpose doctrine without running afoul of the PCA. But no statute expressly authorizes the DOJ to use JAG officers to prosecute civilians in civilian court under any other circumstances. Put differently, DOJ "*may not request*" JAG officers to prosecute civilians in violation of the PCA – at least not lawfully – and thus 10 U.S.C. § 806(e)(1) does not permit JAG participation in such an arrangement.

Second, as with 28 U.S.C. § 543, applying the *Mitchum/Vendo* test to section 806(e)(1) leads to the conclusion that it does not expressly authorize an exception to the PCA. Under *Mitchum/Vendo*, the question here "is whether [10 U.S.C. § 806(e)(1)] . . .

could be given its intended scope only by" permitting the use of JAGs to prosecute civilians in civilian court for purely civilian offenses. *See Mitchum*, 407 U.S. at 237.

As *Vendo* explained, determining whether a statute "expressly authorized" an exception to a prior statute requires review of the later statutes legislative history to determine its intended scope. Judge Elkins declined to consider the legislative history discussed above. But that history clearly indicates Congress' "intended scope" of sections 806(e)(1) and 973(b) did not include expressly authorizing an exception to the PCA's "absolute ban" on DOJ use of military officers to prosecute civilians in civilian court.

Thus, it is not true that 10 U.S.C. § 806(e)(1) can *only* be given its intended scope by reading it as an exception to PCA. Congress' clear understanding in enacting section 806 was that they were merely authorizing the extant practice, which does not violate the PCA because it is not strictly civilian law enforcement, of DOJ using JAGs as SAUSAs in cases with a military nexus. Put differently, section 806 is "given its intended scope" by reading it as a UCMJ housekeeping provision confirming that otherwise lawful JAG litigation does not violate the UCMJ. It need not serve as a PCA exception to achieve its intended scope. Under the *Mitchum/Vendo* test, then, section 806(e)(1) does not "expressly authorize" an exception to the PCA.

For all these reasons, Judge Elkins's conclusion that 10 U.S.C. § 806(e)(1) expressly authorizes the DOJ to use JAG officers to prosecute civilians in civilian court for purely civilian offenses is contrary to law and should be overruled.

**E.    The Statues That Do Expressly Authorize a PCA Exception Are Clear, Specific, and Explicit About the Exception.**

Finally, there are numerous statutes that *do* "expressly authorize" civilian use of the military and constitute exceptions to the PCA, all of which satisfy the *Mitchum/Vendo* test. Some contain an express reference to the PCA itself. *E.g.,* 5 U.S.C. § 408(g) (specifically referencing "section 1385 of title 18). Others expressly authorize civilian use of the military contain specific reference to the relevant branches of the military. *E.g.,* 16 U.S.C. § 23 (authorizing the "necessary details of troops" for protection of Yellowstone National Park when requested by the Secretary of the Interior); 18 U.S.C. 112(f) (referencing the "Army, Navy, and Air Force); 18 U.S.C. § 351 (same); 18 U.S.C. § 1116 (d) (same); 18 U.S.C. § 1201(f)  (same); 18 U.S.C. § 1751(i) (same); 18 U.S.C. § 831(e), (f) (explaining that "the Attorney General may request assistance from the Secretary of Defense . . . [and DOD] personnel"); *United States v. Hernandez-Garcia*, 44 F.4th 1157, 1164 (9th Cir. 2022) (explaining that National Defense Authorization Act provided "express authorization" for Border Patrol to use U.S. Marines to conduct border surveillance because the statute's plain language specifically authorizes such participation by the Marines).

Together, these statutes illustrate the "commonly accepted proposition" that "the phrase 'in cases and under circumstances expressly authorized by . . . Act of Congress' demands that the statutory exception specifically refer to some form of military assistance." *See Elsea*, R42659, supra, at 34 (emphasis added).[3] As Judge Charles Breyer wrote

---

[3] Consistent with this principle, in 2013, the DoD issued its Instruction 3025.21, which lists, among other things, "[t]he laws that permit direct DoD participation in civilian law enforcement . . ."  DoDI 3025.21, Enclosure 3, subd. 1(b)(5). Neither 28 U.S.C. § 543

recently in *Newsom v. Trump*, "a close look at the recognized statutory exceptions to the [PCA]" reveal many "apply only in very specific circumstances," "are narrow," and "do not undermine the whole act." 797 F. Supp. 3d 1092, 1116 (N.D. Cal. 2025). These exceptions are relevant here because they show that Congress knows how to expressly authorize a PCA exception when it wants to do so.[4]

**F.      The *Allred* and *Silva-Rosa* Cases Are Inapposite.**

Judge Elkins cited *United States v. Allred*, 867 F.2d 856, 858-59 (5th Cir. 1989), and *United States v. Silva-Rosa*, 275 F.3d 18, 20 (1st Cir. 2001) to support her conclusion that 28 U.S.C. § 543 "expressly authorize" Lt. Richards' appearance. But this case is nothing like *Allred* or *Silva-Rosa*. First, the prosecutor in *Allred* was a U.S. Air Force JAG officer who had been sworn in as a special assistant to the United States Attorney to assist with the investigation and prosecution of one case involving contractor fraud on the air force base where the JAG officer was stationed. *Allred*, 867 F.2d at 870-871. Mr. Richards

---

nor 18 U.S.C. 806(e)(1) appear on this list of "expressly authorized" PCA exceptions recognized by the Department of Defense. Similarly, DoD Instruction 5525.07 established an understanding between the DoD and DOJ regarding prosecuting individuals in matters where both agencies have jurisdiction. There is no provision in this DoD Instruction authorizing DoD attorneys as SAUSAs where the DoD lacks jurisdiction, however. *Id*.

[4] For example, the House report accompanying the enactment of 18 U.S.C. § 831 explains that the statute, "sets forth an exception to the 'Posse Comitatus' prohibition . . ." H.R. Rep. 97-624, at 10–11 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 3229, 3238–39; *see also* H.R. Rep. 97-71 pt. 2 at 12 ("Proposed section 375 represents a modest and conditional departure from the current strictures of the Posse Comitatus Act."); S. Rep. 95-1071, at 37 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2676, 2712 (identifying a section that "exempts [DOD Inspector General audits and investigations] from the Posse Comitatus Act (18 U.S. 1385).").

is prosecuting at multiple cases in this District. None involve the military in any way, let alone crimes committed against the Army on the base where he is stationed. The longstanding concerns about undue influence of the military on civilian law enforcement are entirely absent from Allred and were not considered by the court in construing the relevant statutes.

Moreover, *Allred* simply gets the analysis of these statutes wrong. As discussed above, 28 U.S.C. § 543 does not expressly grant authority for the DOJ to co-opt military lawyers to serve in a civilian capacity. Nor does 10 U.S.C. § 806(d)(1). *Allred* does not grapple with the legislative history and background of the statutes at issue, history which confirms, among other things, that the intended scope of 10 U.S.C. § 806(e)(1) extends only to the participation of JAG officers in civilian court in cases with a military purpose or nexus. *Silva-Rosa* is similarly inapposite. It did not even address the PCA or its prohibition on civilian use of the military, instead considering a separation of powers argument as to why the JAG prosecutors should be disqualified. *See Silva*-Rosa, 275 F.3d at 21-22. These cases do not support Judge Elkins' conclusion that the statutes at issue expressly authorize Lt. Richards' prosecution of Mr. Johnson.

## IV. DOD REGULATIONS PROHIBIT LT. RICHARDS' APPEARANCE IN THIS CASE.

In 1981, Congress delegated to the Secretary of Defense the task of promulgating regulations to ensure military personnel did not directly participate in civilian law enforcement. The statute states:

> The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that any activity (including the provision of any

equipment or facility or the assignment or detail of any personnel) under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

10 U.S.C. § 275.

In fact, as Judge Elkins recognized, the Army's own regulations preclude Mr. Richards' prosecution of Mr. Johnson's wholly civilian case. ECF No. 61 at 10-12. Specifically, 32 C.F.R. § 516.4 limits Army JAG officers to appearing as SAUSAs in cases, "in which the Army has an interest." 32 C.F.R. § 516.4(e). This is not such a case. The Army has no interest in prosecuting Mr. Johnson for a misdemeanor violation of 18 U.S.C. § 111 involving alleged interference with an ICE or CBP agent. Similarly, per Army Regulation 27-10, ¶ 23-5(a), *Military Justice* (8 January 2025), Army JAG officers may prosecute misdemeanors in civilian court only where the misdemeanor was committed on a military installation. The allegations against Mr. Johnson do not involve a military installation or even military personnel.

In short, Lt. Richards' appearance in this case does not even comport with the Army's own regulations, let alone the PCA. If 10 U.S.C. § 806 meant to authorize JAG officer participation in purely civilian prosecutions, it would make no sense for the Army to forbid it via its own regulations. The statute was not so intended, it did not so authorize, and the conflict between Judge Elkins' reading of section 806(e)(1) and her reading of 32 C.F.R. § 516.4 is one more reason why her Order should be reversed.

**V. THE COURT CAN AND SHOULD STRIKE LT. RICHARDS' APPEARANCE.**

Where an attorney's appearance would violate the law or the court's rules, the Court must strike that appearance. *E.g., Adolph v. Indiana Gaming Comm'n,* No. 1:09-CV-1396-SEB-TAB, 2010 WL 3447554, at *1 (S.D. Ind. Aug. 30, 2010) (striking attorney appearances where they would have violated the False Claims Act); *Wilhelm v. City of Calumet City, Illinois*, No. 04 C 4272, 2005 WL 8179057, at *1 (N.D. Ill. May 11, 2005) (granting motion to strike appearance where attorney had impermissible conflict of interest).

The Court should exercise that authority here. As Judge Elkins recognized, "[a]gencies must follow their own regulations." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025) (citing *United States ex rel. Accardi v.Shaughnessy*, 347 U.S. 260, 268 (1954)). "Federal regulations have the force and effect of law," *Resol. Tr. Corp. v. Home Sav. of Am.*, 946 F.2d 93, 96 (8th Cir. 1991), and courts can remedy their violation. *See, e.g., Service v. Dulles*, 354 U.S. 363, 388 (1957) (holding federal government employee's dismissal invalid when agency regulations were violated); *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959) (same).

Moreover, the Court is not powerless in the face of a PCA violation. As the Supreme Court explained in *Laird v. Tatum*:

> . . . when presented with claims of judicially cognizable injury resulting from military intrusion into the civilian sector, federal courts are fully empowered to consider claims of those asserting such injury; there is nothing in our Nation's history or in this Court's decided cases, including our holding today, that can properly be seen as giving any indication that actual or threatened injury by reason of unlawful activities of the military would go unnoticed or unremedied.

408 U.S. at 15–16. More fundamentally, the Court cannot countenance a felony by allowing DOJ to use JAG officers to prosecute Defendant in violation of the PCA.

As the court explained in *Newsom v. Trump*:

> The Posse Comitatus Act does not provide a private cause of action for damages. . . But a plaintiff can still bring an *ultra vires* claim where, as Plaintiffs assert is the case here, an "agency has disregarded a specific and unambiguous statutory directive" or "has violated some specific command of a statute."

786 F. Supp. 3d 1235, 1258 (N.D. Cal. 2025). That is exactly what has happened here. DOJ is continuing with the use of a JAG to prosecute Mr. Johnson in direct violation of the PCA as well as the Army's own regulations. Lt. Richards' appearance should be struck to put an end to the *ultra vires* conduct.

## CONCLUSION

For the above-stated reasons, the Court should reverse Judge Elkins' Order Denying Defendant's Motion to Strike Appearance and strike the appearance of Lt. Richards or any other JAG officer appearing in this case.

Dated: June 5, 2026

*/s/ Kevin C. Riach*
Kevin C. Riach (#0389277)
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Telephone: 612.203.8555
kevin@riachdefense.com
*Attorney for Defendant*

25

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Local Rule 72.2(c) and this Court's Order at ECF No. 67, because it contains 6937 words, as determined by the Word Count function of Microsoft Word. It also complies with the typeface and type-style requirements of Local Rule 72.2(c) because it was prepared with Microsoft Word and uses 13-point proportionately spaced Times New Roman font.

Dated: June 5, 2026                                    */s/ Kevin C. Riach*